UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AARON RUBENSTEIN, <br><br> Plaintiff, <br><br> v. <br><br> BRUCE R. BERKOWITZ, and FAIRHOLME CAPITAL MANAGEMENT, LLC, <br><br> Defendants, <br><br> and <br><br> SEARS HOLDINGS CORP., <br><br> Nominal Defendant. | No. 17-cv-821 (JPO) <br><br> AFFIDAVIT OF FERNANDO FONT |

STATE OF FLORIDA      )
                      ): ss.:
MIAMI –DADE COUNTY    )

Fernando M. Font, being duly sworn, deposes and says:

      1.    I am the Chief Administrative Officer of Defendant Fairholme Capital Management, LLC ("Fairholme"). I am familiar with the facts herein, and I make this affidavit in support of Defendants Fairholme and Bruce R. Berkowitz's ("Berkowitz") motion to dismiss the complaint in the above titled action.

      2.    Fairholme is registered as an investment adviser under the Investment Advisers Act of 1940 and the regulations thereunder. Berkowitz is its founder and Chief Investment Officer. Fairholme provides investment management services through a pooled investment fund, registered investment companies, and via separately "managed accounts" that are not pooled with other fund clients.

3.	Fairholme has entered into Investment Management Agreements ("IMAs") with each of the managed accounts, which governs the relationship between the account owner and Fairholme. Thirteen of the managed accounts had purchases and sales of publicly-traded securities issued by Sears Holding Corp. ("Sears securities") within a six-month window between September 18, 2014 to February 2, 2017 (the "Relevant Period," according the Complaint). I refer to these accounts as the "Relevant Managed Accounts" for the purposes of this affidavit.

4.	Fairholme generally makes investment-related decisions regarding securities in these managed accounts. At times, however, a client may decide to terminate their IMA or otherwise direct sales in their account. In these cases, the ensuing sale of the shares in that account is the result of an investment decision made by the client, not Fairholme. During the Relevant Period, five of the Relevant Managed Accounts made a decision to voluntarily terminate their agreement, leading to the sale of Sears securities in their account. The pertinent provisions of such directives are attached collectively to this affidavit as Exhibit A. Also during the Relevant Period, ten of the Relevant Managed Accounts directed sales of shares in their account, including shares of Sears securities.[1] The pertinent provisions of such directives are attached collectively to this affidavit as Exhibit B.

5.	Each of the Relevant Managed Accounts has the same provisions in its IMA concerning the compensation that Fairholme is entitled to for its services. Those provisions – contained in Section 6 and Schedule C of the IMAs – are attached hereto as Exhibit C. These contractual provisions demonstrate that Fairholme does not receive any interest in the profits of a Relevant Managed Account. Rather, Fairholme is paid for its services through a management

---

[1] Two of the thirteen Relevant Managed Accounts both directed sales of shares in their account and terminated their agreement.

fee calculated based on total assets under management. *See* Ex. C ("[T]he Client will pay to Fairholme the quarterly management fee…set forth in Schedule C based on the total gross value…of all securities and other assets in the Account over which Fairholme has investment discretion (the 'Asset Value')."). Neither Fairholme nor Berkowitz receives any other form of compensation from the Relevant Managed Accounts.

_____<br>Fernando M. Font

Sworn to before me on
April 27, 2017

_____
Notary Public

JODI LIN
MY COMMISSION # GG064143
EXPIRES March 06, 2021