# EXHIBIT C

investments and to borrow funds from the Custodian for the purpose of trading on margin" will not apply. All other powers granted by Section 2 that are consistent with ERISA and Section 4975 of the Code, as applicable, will remain in force.

6) **Management Fee.** Except as provided in Section 5 hereof, the Client will pay to Fairholme the quarterly management fee (the "Management Fee") set forth in Schedule C based on the total gross value, which will not reflect any deductions or offsets from margin assets, of all securities and other assets in the Account over which Fairholme has investment discretion (the "Asset Value"). The Client authorizes Fairholme to instruct the Custodian to deduct the Management Fee from the Account and to pay the Management Fee directly to Fairholme. The Custodian is responsible for sending the Client a periodic statement, at least quarterly, showing all amounts paid from the Account, including all Management Fees paid by the Custodian to Fairholme. The Client is responsible for verifying the accuracy of the calculation of the Management Fee, which is set forth in Schedule C.

(b) The Management Fee will cover all investment management services rendered by Fairholme under this Agreement. The Management Fee will not cover: (i) brokerage commissions and transaction fees for transactions executed for the Account through brokers and dealers; (ii) the Custodian's custodial fees; or (iii) other fees and expenses associated with the Account.

(c) The first payment of the Management Fee is due on execution of this Agreement and will be assessed pro rata in the event this Agreement is executed at any time other than the first business day of a calendar quarter. Thereafter, for succeeding calendar quarters, the Management Fee will be payable in advance at the beginning of each calendar quarter and will be based on the Asset Value of the Account as of the last trading day of the previous calendar quarter. In the event this Agreement is terminated, Fairholme will refund any unearned fees pro rata, in accordance with Section 14 (Termination).

(d) The Asset Value of the Account will be determined by valuing securities as follows: (i) securities that are listed on national exchanges and are freely transferable will be valued at their last sales price on the date of determination on the exchange that constitutes the principal market for that security, or, if no sales occurred on such day, at the "bid" price on such exchange at the close of business on such day and if sold short at the "asked" price at the close of business on such day; (ii) securities traded over the counter that are freely transferable will be valued at the last sales price on the date of determination, or, if no sales occurred on such day, at the "bid" price at the close of business on such day and if sold short at the "asked" price at the close of business on such day; and (iii) all other assets in the Account will be valued at their fair market value in a manner deemed appropriate by Fairholme.

(e) Fairholme will not charge the Management Fee on any assets in the Account invested in a Fund. The Client understands that the Fund pays a management fee to Fairholme for its services to a Fund and that the Client will indirectly pay the Client's pro rata portion of such Fund's management fee to Fairholme to the extent assets in the Account are invested in a Fund.

7) **Contributions and Withdrawals.** The Client may make additions to the Account at any time. Additional assets received into the Account will be charged a pro rata Management Fee based on the number of days remaining in the quarter. The Client may withdraw assets on written notice to Fairholme, subject to the usual and customary securities settlement procedures. Fairholme maintains the right to terminate an Account that falls below the minimum account size set forth in Part II of Fairholme's Form ADV, which can be found at www.fairholme.net. No adjustment or refund will be made for partial withdrawals by the Client during any period. Fairholme will not impose any start-up, closing, or penalty fees in connection with the Account, however the Custodian may do so.

8) **Scope of Liability.** (a) To the greatest extent permitted by applicable law, Fairholme will not be liable for any expenses, losses, damages, liabilities, demands, charges and claims of any kind or nature whatsoever (including any costs and expenses, including legal expenses, relating to investigating or defending any demands, charges and claims) ("Losses") by or with respect to the Client's Account, except to the extent such Losses are actual losses proven with reasonable certainty, are not speculative, are proven to have been fairly within the contemplation of the parties as of the date of this Agreement, and are determined by a court of competent jurisdiction or an arbitration panel (in accordance with Section 22) in a final non-appealable judgment or order to have been the sole and direct result of an act or omission taken or omitted by Fairholme during the term of this Agreement which constitutes willful malfeasance, bad faith, illegal conduct, reckless disregard or gross negligence with respect to Fairholme's obligations under this Agreement. Without limiting the generality of the foregoing, Fairholme will not be liable for any indirect, special, incidental or consequential damages or other losses (regardless of whether such damages or other losses were reasonably foreseeable). Fairholme will not be responsible for any Losses incurred after termination of the Account. Fairholme will have no responsibility whatsoever for the management of any of the Client's assets which are not managed by Fairholme and will incur no liability for any Losses that may result from the management, mismanagement or non-management of such other assets of the Client. Certain U.S. federal and state laws (including ERISA) may impose liabilities under certain circumstances on persons who act in good faith, and nothing in this Agreement will in any way constitute a waiver or limitation of any rights that the Client may have under any such applicable laws. Subject to the foregoing, the Client's rights under this Section 8(a) will be the exclusive remedy for any breach by Fairholme of this Agreement.

## SCHEDULE C

### MANAGEMENT FEE

The Management Fee, as described in Section 6 of the Agreement, shall be as follows:

0.25% quarterly (1.0% annually)