UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AARON RUBENSTEIN,<br><br>    Plaintiff,<br>v.<br><br>BRUCE R. BERKOWITZ, and<br>FAIRHOLME CAPITAL MANAGEMENT, L.L.C.,<br>and JOHN DOES 1 THROUGH 13,<br><br>    Defendants,<br><br>and<br><br>SEARS HOLDINGS CORP.,<br><br>    Nominal Defendant. | No. 17 Civ. 821 (JPO)<br>(ECF Case)<br><br>**FIRST AMENDED COMPLAINT FOR RECOVERY OF SHORT SWING PROFITS UNDER 15 U.S.C. § 78p(b)**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Aaron Rubenstein ("Plaintiff") by his attorneys, as and for his complaint herein, respectfully alleges the following on knowledge as to himself and his own acts, and on information and belief as to all other matters:

**NATURE OF THE ACTION**

1.     This is an action to recover "short-swing" profits under Section 16(b) of the Securities Exchange Act of 1934, as amended (the "Act"), 15 U.S.C. § 78p(b).

2.     Section 16(b) is a strict liability statute. A plaintiff must prove only that the defendant was an insider of a public company who profited from the purchase and sale of shares of one class of that company's equity securities or derivative securities referencing that equity security within a period of less than six months. Evidence of the defendant's intent, misuse of information or bad faith is irrelevant. Section 16(b) is not punitive but prophylactic and insiders are simply required to disgorge profits realized and retained in violation of the Act.

1

3. Defendants Bruce R. Berkowiz ("Berkowitz") and Fairholme Capital Management, L..L.C. ("Fairholme") at all times relevant were and are insiders of Nominal Defendant Sears Holdings Corp. ("Sears"), to wit: beneficial owners of more than 10% of a class of equity securities, Sears common stock.

4. John Does 1 through 13 are the owners of brokerage trading accounts holding shares of common stock of Sears, and managed with respect to the acquisition, holding, voting and disposition of shares, by Berkowitz and Fairholme. The identities of John Does 1 through 13 are unknown to Plaintiff and will need to be discovered.

5. Berkowitz, who controls Fairholme, at times relevant to this complaint, formed a control purpose with respect to Sears, seeking and obtaining board representation.

6. Such board representation was given in deference to Berkowitz's more than 10% beneficial ownership position achieved, *inter alia*, by aggregating the holdings of John Does 1 through 13 under his and Fairholme's control.

7. By aggregating their securities with a Sears control purpose, Berkowitz and Fairholme formed and constituted a "group" with each of the John Doe defendants 1 through 13, for purposes of both Section 13(d) and Section 16 of the Act.

8. Berkowitz and Fairholme had a pecuniary interest in the shareholdings of John Does 1 through 13, and in any shares of Sears held by them.

9. Each of John Does 1 through 13 had a pecuniary interest in any Sears shares held in their respective accounts managed by Berkowitz and by Fairholme.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to Section 27 of the Act, 15 U.S.C. § 78aa.

11. Venue is proper in this Court pursuant to Section 27 of the Act, 15 U.S.C. § 78aa. Nominal Defendant Sears is the parent company and owner of several retail brands and stores, including Sears and Kmart, with locations within this District, and otherwise does extensive business within the District. The common stock of Sears is traded over-the-counter on NASDAQ, a national securities exchange headquartered in the District, and through market-makers located within the District. Berkowitz and Fairholme are investment advisors who conduct extensive business, chiefly involving the trading of securities including Sears securities, on exchanges or through market-makers within the District. Some or all of the transactions giving rise to liability as described herein occurred or were executed within the District.

## THE PARTIES

12. Aaron Rubenstein is a Rhode Island resident and a shareholder of Sears.

13. Sears is a Delaware corporation with principal Offices at 3333 Beverly Road, Hoffman Estates, Illinois 60179. This action is brought in the right and for the benefit of Sears which is named as the Nominal Defendant solely in order to have all necessary parties before the Court.

14. Berkowitz is the founder and Chief Investment Officer and controls the sole member of Fairholme.

15. Fairholme is an investment advisor and serves as the investment manager for various managed accounts including those of John Does 1 through 13.

16. Berkowitz and Fairholme have their principal offices or are otherwise found at 4400 Biscayne Boulevard, 9th Floor, Miami, Florida 33137.

17. John Does 1 through 13 are owners of brokerage accounts managed by Berkowitz and Fairholme. Their identities are not yet known and will be discovered.

18. Berkowitz, Fairholme, and John Does 1 through 13 are referred to collectively hereafter as the "Defendants."

## STATUTORY REQUISITES

19. At all relevant times (meaning the times of trading activity to be described herein), the common stock of Sears was registered under Section 12(b) of the Act, 15 U.S.C. § 78*l*.

20. At all relevant times, the Defendants were members of a "group" under standards applicable to Sections 13 and 16 of the Act. Each Defendant and group member was individually attributed with the group's collective beneficial ownership of Sears common stock exceeding the 10% threshold under Section 16, and treated as an independent statutory insider of Sears.

21. Demand for prosecution was made on September 29, 2016. Plaintiff's counsel was subsequently informed by counsel for Fairholme that the Defendants deny any liability under Section 16(b) of the Act. As of the date of the original Complaint and as of the date of this First Amended Complaint, Defendants have not disgorged short-swing profits to Sears arising from the trades identified in Plaintiff's demand letter or further identified herein. Delay in the filing of suit would have been a futile gesture and might have prejudiced Sears' right to recover.

22. This action has been brought within two years of the occurrence of the violations described herein or within two years of the time when reports disclosing the violations were first filed with the Securities & Exchange Commission (the "SEC").

## BACKGROUND

23. On or about September 18, 2014, the Defendants, together with Fairholme Funds, Inc., which is under common control with the Defendants, filed an initial Schedule 13D with the Securities & Exchange Commission in which they disclosed their aggregate beneficial ownership

of approximately 24% of the outstanding shares of Sears common stock. Their Schedule 13D stated:

> "[Berkowitz and Fairholme] reserve the right to be in contact with Members of [Sears] management [and] Board of Directors, other significant shareholders and others regarding alternatives that [Sears] could employ to increase shareholder value. The contact may include proposing or considering any of the actions enumerated in Item 4 of the instructions to Schedule 13D" (i.e., actions having a "change of control" purpose or effect with respect to Sears).

24. Among the shares included in the beneficial ownership reported by the Defendants were shares of Sears owned by and held in "certain accounts advised by Fairholme," and over which one or both of Berkowitz and Fairholme shared voting and investment control with the "managed account" owners.

25. Each of John Does 1 through 13 are or were owners of one or more of the "managed accounts" included and aggregated on Defendants' initial and amended Schedule 13D filings.

26. As a result of the "change of control" actions contemplated by the Defendants, Berkowitz and Fairholme became ineligible from at least September 18, 2014, the date on which their "change of control" intentions were reportedly adopted, to claim any exemption from the Section 16 reporting and disgorgement obligations that may previously have been available to them as "investment advisors" to the "managed accounts," under SEC Rule 16a-1(a)(1)(v).

27. As of September 18, 2014, at the latest, the owners of the "managed accounts" sharing investment and voting authority over their respective Sears shares with Berkowitz and Fairholme, including John Does 1 through 13, understood and agreed, either affirmatively or through silent acquiescence, to authorize Berkowitz and Fairholme to take the contemplated "change of control actions" for the purpose of "increasing the "value" of their Sears holdings.

28. As a result of the disclosure and consent by the "managed account" owners (including John Does 1 through 13) to the anticipated "change of control" actions pursued with

the voting and investment authority shared with Berkowitz and Fairholme over his, or, or its respective Sears shares, each of the "managed account" owners (including John Does 1 through 13) formed a Section 13(d) "group" with Berkowitz and Fairholme, and each individual John Doe defendant was subject to Section 16 as a statutory "insider" in their own right.

29. Additionally, because each John Doe defendant consented and contributed to the Sears control effort as disclosed and undertaken by Fairholme and Berkowitz through his, her, or its respective "managed account," all John Doe defendants were or became ineligible to claim any "beneficial ownership" or Section 16 exemption previously or otherwise available under SEC Rule 16a-1(a)(1).

30. The "change of control" actions anticipated and contemplated by Berkowitz and Fairholme, and referenced in Item 4 of their September 18, 2014, initial Schedule 13D disclosure, culminated in Berkowitz's appointment to the Sears board of directors on or about February 24, 2016. Berkowitz remained on the Sears board at the time of filing of the original Complaint. Berkowitz voluntarily resigned from the Sears board effective October 31, 2017, as disclosed in the Schedule 13D Amendment No. 8 filed by or on behalf of the Defendants on October 17, 2017. The Schedule 13D Amendment noted that Berkowitz's resignation from the Sears board was "not the result of any disagreement with [Sears] on matters related to [Sears'] operations, policies or practices."

31. Notwithstanding Berkowitz's resignation from the Sears board, the Defendants disclosed their continuing Sears control efforts in their Schedule 13D Amendment No. 8, which also publicly announced Berkowitz's resignation, and in their most recent Schedule 13D Amendment No. 9, which was filed on November 3, 2017. As stated in both Schedule 13D Amendments (Nos. 8 & 9):

"[Berkowitz and Fairholme] reserve the right to be in contact with members of [Sears'] management, the members of [Sears'] Board of Directors, other significant shareholders and others regarding alternatives that [Sears] could employ to increase shareholder value. In addition, [Berkowitz and Fairholme] will be in contact with members of [Sears'] management, the members of [Sears'] Board of Directors, other significant shareholders and others regarding [Berkowitz and Fairholme's] views on the long-term prospects of [Sears]. The contact may include proposing or considering any of the actions enumerated in Item 4 of the instructions to Schedule 13D [i.e., "change of control" actions].

32. Given the Defendants' disclosed continuing control purpose and influence over Sears and their continuing collective beneficial ownership of more than 10% of outstanding Sears common stock, all Defendants remain individually subject to Section 16 as insiders and participating members of a Sears control group within the meaning of Sections 13 and 16 of the Act, and none of the Defendants are eligible for any "beneficial ownership" or Section 16 exemption under SEC Rule 16a-1(a)(1), as of the date of this First Amended Complaint.

33. Between September 18, 2014, and on an ongoing basis through the date of this First Amended Complaint, each of the John Doe defendants and "managed account" owners, together with Berkowitz and Fairholme, engaged in purchases and sales of Sears common stock or other Sears securities equivalent to common stock, during periods of less than six months, which resulted in their realization of profits recoverable under Section 16(b).

## CLAIM FOR RELIEF

34. Plaintiff repeats and re-alleges the allegations contained in the preceding 33 paragraphs.

35. The identities of each of John Does 1 through 13 will need to be established through discovery as the Schedules 13D and 13D/A filed by Berkowiz and Fairholme do not name them and Forms 3 and 4 have not been filed for the group or any John Doe, as required.

36. John Does 1 through 13, while members of the Section 13(d) "group" organized by Berkowitz and Fairholme, engaged in the purchases and sales and realized the short-swing profits here enumerated.

37. **John Doe # 1**:

| Transaction | Date | No. Shares | Price/Share |
|---|---|---|---|
| Purchase | Feb. 2, 2015 | 12,200 | $32.66 |
| Sale | Dec. 31, 2014 | 12,200 | $33.03 |

Subject to revision following discovery, John Doe #1 realized total short swing profits estimated at $4,514.00.

38. **John Doe # 2:**

| Transaction | Date | No. Shares | Price/Share |
|---|---|---|---|
| Purchase | Jan. 22, 2015 | 7,100 | $32.14 |
| Sale | Dec. 22, 2014 | 7,100 | $33.63 |

Subject to revision following discovery, John Doe #2 realized total short swing profits estimated at $10,579.00.

39. **John Doe # 3:**

| Transaction | Date | No. Shares | Price/Share |
|---|---|---|---|
| Purchase | Feb. 11, 2016 | 16,600 | $15.00 |
| Purchase | Jan. 15, 2016 | 13,700 | $17.07 |
| Purchase | Jan. 20, 2016 | 5,200 | $16.48 |
| Sale | Mar. 4, 2016 | 96,200 | $18.40 |

Profits from multiple transactions within a given six-month period are calculated pursuant to the lowest-in, highest-out method prescribed under Section 16(b). Subject to revision following discovery, John Doe #3 realized total short swing profits estimated at $84,645.00.

40. **John Doe # 4:**

| Transaction | Date | No. Shares | Price/Share |
|---|---|---|---|
| Purchase | Aug. 14, 2015 | 4,125 | $24.83 |
| Sale | Aug. 14, 2015 | 14,740 | $24.95 |

Subject to revision following discovery, John Doe # 4 realized total short swing profits estimated at $495.00.

41. **John Doe # 5:**

| Transaction | Date | No. Shares | Price/Share |
|---|---|---|---|
| Purchase | Aug. 14, 2015 | 4,697 | $24.83 |
| Sale | Aug. 14, 2015 | 16,781 | $24.95 |

Subject to revision following discovery, John Doe # 5 realized total short swing profits estimated at $563.64.

42. **John Doe # 6:**

| Transaction | Date | No. Shares | Price/Share |
|---|---|---|---|
| Purchase | Aug. 14, 2015 | 4,178 | $24.83 |
| Purchase | Feb. 10, 2016 | 2,500 | $15.10 |
| Sale | Aug. 14, 2015 | 14,929 | $24.95 |

Subject to revision following discovery, John Doe # 6 realized total short swing profits estimated at $25,126.36.

43. **John Doe # 7:**

| Transaction | Date | No. Shares | Price/Share |
|---|---|---|---|
| Purchase | May 27, 2016 | 200 | $13.30 |
| Purchase | June 1, 2016 | 200 | $12.62 |
| Sale | Aug. 11, 2016 | 1,900 | $17.09 |

Subject to revision following discovery, John Doe # 7 realized total short swing profits estimated at $1,652.00.

44. **John Doe # 8:**

| Transaction | Date | No. Shares | Price/Share |
|---|---|---|---|
| Purchase | Jan. 14, 2016 | 37,000 | $18.15 |
| Sale | Dec. 14, 2015 | 16,300 | $21.56 |

Subject to revision following discovery, John Doe # 8 realized total short swing profits estimated at $55,583.00.

45. **John Doe # 9:**

| Transaction | Date | No. Shares | Price/Share |
|---|---|---|---|
| Purchase | Jan. 14, 2016 | 1,400 | $18.15 |
| Purchase | Jan. 19, 2016 | 1,500 | $17.19 |
| Purchase | Feb. 10, 2016 | 2,800 | $15.10 |
| Purchase | June 1, 2016 | 3,700 | $12.62 |
| Sale | Dec. 8, 2015 | 22,800 | $19.95 |

Subject to revision following discovery, John Doe # 9 realized total short swing profits estimated at $47,361.00.

46. **John Doe # 10:**

| Transaction | Date | No. Shares | Price/Share |
|---|---|---|---|
| Purchase | Jan. 25, 2016 | 6,800 | $18.19 |
| Purchase | Jan. 26, 2016 | 500 | $17 |
| Purchase | Feb. 9, 2016 | 400 | $15.71 |
| Purchase | June 1, 2016 | 800 | $12.51 |
| Purchase | June 10, 2016 | 600 | $12.44 |
| Sale | Dec. 24, 2015 | 5,600 | $20.92 |

Subject to revision following discovery, John Doe # 10 realized total short swing profits estimated at $24,869.00.

47. **John Doe # 11**

| Transaction | Date | No. Shares | Price/Share |
|---|---|---|---|
| Purchase | Jan. 29, 2016 | 7,800 | $17.49 |
| Purchase | Feb. 9, 2016 | 700 | $15.71 |

| Transaction | Date | No. Shares | Price/Share |
|---|---|---|---|
| Purchase | June 1, 2016 | 800 | $12.51 |
| Purchase | June 10, 2016 | 600 | $12.44 |
| Sale | Dec. 29, 2015 | 5,200 | $21.07 |

Subject to revision following discovery, John Doe # 11 realized total short swing profits estimated at $26,876.00.

48.     **John Doe # 12**

| Transaction | Date | No. Shares | Price/Share |
|---|---|---|---|
| Purchase | Jan. 29, 2016 | 7,600 | $17.49 |
| Purchase | Feb. 9, 2016 | 800 | $15.71 |
| Purchase | June 1, 2016 | 800 | $12.51 |
| Purchase | June 10, 2016 | 600 | $12.44 |
| Sale | Dec. 29, 2015 | 5,100 | $21.07 |

Subject to revision following discovery, John Doe # 12 realized total short swing profits estimated at $26,696.00.

49.     **John Doe # 13**

| Transaction | Date | No. Shares | Price/Share |
|---|---|---|---|
| Purchase | Jan. 29, 2016 | 17,200 | $17.49 |
| Purchase | Feb. 9, 2016 | 1,600 | $15.71 |
| Purchase | June 1, 2016 | 1,000 | $12.51 |
| Purchase | June 10, 2016 | 1,300 | $12.44 |
| Sale | Dec. 29, 2015 | 11,500 | $21.07 |

Subject to revision following discovery, John Doe # 13 realized total short swing profits estimated at $55,563.00.

50.     Berkowitz and Fairholme, or either of them, benefitted from the foregoing trades through a performance based fee arrangement sufficient to qualify as a pecuniary interest in such trades.

51. The amount of recoverable profits realized by Berkowitrz and Fairholme, or either of them, will require discovery of their management contracts and books and records, and cannot be estimated at the time of filing of this First Amended Complaint.

52. Total short swing profits recoverable from all Defendants cannot be calculated with precision prior to discovery, but are presently estimated at $364,523.00, which is equal to the sum total of profits recoverable from the John Doe Defendants (or their "managed accounts"), as individually calculated in Paragraphs 37-49 of this First Claim for Relief.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment:

a) Requiring each Defendant to account for and pay to Sears the short-swing profits recoverable from him, her or it under the Act together with appropriate pre-judgment and post-judgment interest and costs of this suit;

b) Awarding to Plaintiff his costs and disbursements including reasonable attorneys', accountants and expert witness fee; and

c) Granting such other and further relief as the Court deems just and proper.

Dated:   New York, New York
         December 20, 2017

*s/ David Lopez*                                      *s/ Miriam Tauber*

David Lopez (DL-6779)                          Miriam Tauber (MT-1979)
Law Offices of David Lopez                     Miriam Tauber Law PLLC
171 Edge of Woods Road (PO Box 323)            885 Park Avenue 2A
Southampton, New York 11968                    New York, New York 10075
Telephone: (631) 287-5520                      Telephone: (323) 790-4881
Email:  DavidLopezEsq@aol.com                  Email:  MiriamTauberLaw@gmail.com
*Attorney for Plaintiff*                       *Attorney for Plaintiff*