## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AARON RUBENSTEIN,<br><br>                    Plaintiff,<br><br>        v.<br><br>CARLOS RODRIGUEZ, JOHN R. BURCH, CHARLES KEATES, HEINZ WIEZOREK, CHARLOTTE WIEZOREK, EVA WIEZOREK, THOMAS BRUNNER, GARY ATWELL, SUSAN ATWELL, LARRY SOUZA, SHARON SOUZA, ROBERT RUBIN, NANCY RUBIN, and JENNIFER COLL, *individually and as trustee for unknown beneficiaries*,<br><br>                    Defendants,<br><br>        and<br><br>SEARS HOLDINGS CORP.,<br><br>                    Nominal Defendant. | No.  17 Civ. 821 (JPO)<br>(ECF Case)<br><br>**SECOND AMENDED COMPLAINT FOR RECOVERY OF SHORT SWING PROFITS UNDER 15 U.S.C. § 78p(b)**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Aaron Rubenstein ("Plaintiff") by his attorneys, as and for his complaint herein, respectfully alleges the following on knowledge as to himself and his own acts, and on information and belief as to all other matters:

### NATURE OF THE ACTION

1.      This is an action to recover "short-swing" profits under Section 16(b) of the Securities Exchange Act of 1934, as amended (the "Act"), 15 U.S.C. § 78p(b).

2.      Section 16(b) is a strict liability statute. A plaintiff must prove only that the defendant was an insider of a public company who profited from the purchase and sale of shares of one class of that company's equity securities or derivative securities referencing that equity security within a period of less than six months. Evidence of the defendant's intent, misuse of

information or bad faith is irrelevant. Section 16(b) is not punitive but prophylactic and insiders are simply required to disgorge profits realized and retained in violation of the Act.

3.      Defendants are the owners of discretionary brokerage trading accounts managed by Fairholme Capital Management, L.L.C. ("Fairholme"). All of the Defendants (collectively, the "Fairholme Clients") designated Fairholme as their attorney-in-fact for all purposes related to trading securities in their managed accounts, pursuant to their respective investment management agreements (IMA's) with Fairholme.

4.      Fairholme acted pursuant to the discretionary investment authority delegated by the Clients under their IMA's to adopt a control-purpose investment strategy forming a "group" with and on behalf of each Client within the meaning of Section 13(d) of the Act, which subjected all Fairholme Clients to Section 16(b) as independent statutory insiders of Nominal Defendant Sears Holdings Corp. ("Sears" or the "Company"). Fairholme further acted pursuant to the IMA's in executing short swing Sears securities transactions in Client managed accounts and incurring liability for profits realized in the accounts, which must be disgorged by the respective Client and managed account owner with an underlying pecuniary interest in the securities traded.

5.      Bruce R. Berkowitz, who controls Fairholme, at times relevant to this Complaint, formed a control purpose with respect to Sears, seeking and obtaining board representation.

6.      Such board representation was given in deference to Berkowitz's more than 10% beneficial ownership position achieved, *inter alia*, by aggregating the Sears securities held in the Client managed accounts, as disclosed by Fairholme and Berkowitz on Schedule 13D reports filed by Fairholme with the SEC, as required under Section 13(d) and authorized by the Clients under their respective IMA's.

7. By aggregating the managed accounts with a Sears control purpose, Berkowitz and Fairholme formed and constituted a "group" with each (and every) Client for purposes of both Section 13(d) and Section 16 of the Act, requiring the aggregation and inclusion of all Sears securities held in the managed accounts on Schedule 13D reports, and further subjecting all Sears securities transactions in the managed accounts—whether directed by or for the benefit of Berkowitz, Fairholme, or the Client—to Section 16 reporting requirements and short swing trading restrictions.

8. All of the Fairholme Clients authorized and consented to their membership in the Sears "group" formed and disclosed by Berkowitz and Fairholme on their behalf and as their attorney-in-fact, and became independent statutory insiders of Sears subject to short swing trading restrictions imposed under Section 16(b), at least as of the date on which Fairholme publicly disclosed the Sears control purpose adopted by Berkowitz on behalf of Fairholme and all Clients by filing the required Schedule 13D on September 18, 2014.

9. Each Client had a pecuniary interest in the Sears shares held in their respective accounts, and all Clients are strictly liable to disgorge profits realized from purchases and sales (or sales and purchases) of Sears securities executed in their respective accounts within periods of less than six months.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to Section 27 of the Act, 15 U.S.C. § 78aa.

11. Venue is proper in this Court pursuant to Section 27 of the Act, 15 U.S.C. § 78aa. Nominal Defendant Sears is the parent company and owner of several retail brands and stores, including Sears and Kmart, with locations within this District, and otherwise does extensive

business within the District. The common stock of Sears is traded over-the-counter on NASDAQ, a national securities exchange headquartered in the District, and through market-makers located within the District. The Client accounts were traded by Fairholme in the course of its investment advisory business, which is conducted extensively in this District and chiefly involves the trading of securities, including Sears securities, on exchanges or through market-makers within the District. Some or all of the transactions giving rise to liability as described herein occurred or were executed within the District.

## THE PARTIES

12.     Aaron Rubenstein is a Rhode Island resident and a shareholder of Sears.

13.     Sears is a Delaware corporation with principal Offices at 3333 Beverly Road, Hoffman Estates, Illinois 60179. This action is brought in the right and for the benefit of Sears, which is named as the Nominal Defendant solely in order to have all necessary parties before the Court.

14.     The Fairholme Clients are the owners of brokerage trading accounts managed, invested, and/or voted at Berkowitz's discretion pursuant to their respective IMA's designating Fairholme as each Client's attorney-in-fact for all purposes related to trading in the managed accounts. The Fairholme Clients reside or may otherwise be found at the addresses disclosed by Fairholme in response to Plaintiff's Interrogatory No. 1 (appended as SAC Ex. A).

15.     Fairholme was authorized and obligated, under the IMA's and as a matter of law, to comply with federal securities law requirements triggered by Fairholme's discretionary adoption of investment strategies and execution of trades in the managed accounts on behalf of the Clients, which included filing the SEC disclosures giving rise to Plaintiff's Section 16 claim, and responding to Plaintiff's Section 16 demand and this action asserting that claim. Accordingly, the

Fairholme Clients were initially effectively notified and waived service of and can continue to be reached for all purposes related to this action—including any additional required notice or service of this Second Amended Complaint—through Fairholme, as the publicly disclosed representative of all managed accounts and as attorney-in-fact for each Client, or c/o: Fairholme Capital Management, L.L.C., 4400 Biscayne Boulevard, 9th Floor, Miami, Florida 33137.

## STATUTORY REQUISITES

16.     At all relevant times (meaning the times of trading activity to be described herein), the common stock of Sears was registered under Section 12(b) of the Act, 15 U.S.C. § 78*l*.

17.     At all relevant times, all of the Fairholme Clients were members of a "group" formed by Fairholme and Berkowitz to aggregate their Sears investment power and beneficial ownership of more than 10% of outstanding Sears common stock within the meaning of Section 13(d), and each Defendant was treated as an independent, non-exempt statutory insider of Sears under Section 16(b).

18.     Demand for prosecution was made on September 29, 2016 by Plaintiff's letter addressed to the Sears Board of Directors, which identified the short swing trading in Fairholme funds and unspecified Fairholme managed accounts, as disclosed by Fairholme and Berkowitz in their SEC filings. Plaintiff's demand specifically asserted that potential Section 16(b) profits owed to the Company were not limited to any indirect proportional pecuniary interest in the managed accounts held (or disclaimed) by Berkowitz or Fairholme, but that additional profits could potentially be recovered from any Fairholme Clients and group members with direct ownership of and an underlying pecuniary interest in managed accounts traded in violation of the statute. (*See* SAC Ex. B.)

19.     Fairholme's counsel responded to Plaintiff's Section 16 demand letter on November 22, 2016, initially by relying on the pecuniary interest disclaimer stated in the SEC filings, and without addressing Plaintiff's claim for additional profits recoverable from the managed account Clients as members of Fairholme's group. (*See* SAC Ex. C.) In response to Plaintiff's further inquiry regarding the potential liability of individual Fairholme Clients, Fairholme's counsel provided the account-specific trading information forming the basis of the recovery sought in Plaintiff's original Complaint, and further specified in Plaintiff's First Amended Complaint. (*See* SAC Ex. D. & Ex. E.)

20.     Although Plaintiff reserved the right to object to Fairholme's pecuniary interest disclaimer in connection with his Section 16(b) demand, as reflected in Plaintiff's original and First Amended Complaint, Fairholme was aware that Plaintiff's principal claim was for recovery of profits realized by the Fairholme Clients to be identified by Fairholme as the relevant managed account owners. Accordingly, the central issue disputed by counsel for Plaintiff and Fairholme in their extensive correspondence regarding Plaintiff's demand prior to the filing of this action was whether the Clients were members of a group with Fairholme, and could be held liable for short swing profits realized in their accounts, independently of any proportional pecuniary interest in profits realized (or disclaimed) by Fairholme or Berkowitz. (*See* SAC Ex. D-E.) Notwithstanding the substance of Plaintiff's demand and this correspondence, Fairholme's counsel did not identify the Clients or any other Client representative to which Plaintiff's demand or notice of the Section 16(b) action should be directed. Plaintiff did not receive a separate response to his demand letter from the Company.

21.     Fairholme, as a fiduciary and as attorney-in-fact for each Client, was obligated to notify the Clients of the Section 16(b) claim asserted in Plaintiff's Section 16(b) demand and in

Plaintiff's original Complaint—which Fairholme knew would also (and primarily) have been asserted directly against the relevant Clients, if their identities had been disclosed to Plaintiff (in addition to the separate claim asserted against Berkowitz and Fairholme, "qua Berkowitz and Fairholme," or for their indirect proportional pecuniary interest in managed account profits, which Plaintiff subsequently agreed to voluntarily withdraw with prejudice in contemplation of this Second Amended Complaint naming the Clients as substituted defendants).

22.     Accordingly, the Fairholme Clients are deemed to have been effectively notified and to have waived service of this action, through the notice provided to and waiver executed by Fairholme on behalf of all Clients referenced in the Complaint, and as each Client's designated attorney-in-fact. In the alternative, any otherwise applicable service deadline should be extended to provide Plaintiff with a reasonable opportunity to serve the Clients following Plaintiff's initial discovery of their identities and addresses from Fairholme on March 6, 2018.

23.     This action was brought within two years of the occurrence of the transactions giving rise to the violations alleged herein, or within two years of disclosure of facts providing sufficient notice of the Section 16(b) claims alleged herein. Plaintiff filed this action for the express purpose of preserving the Section 16(b) claim for managed account profits based on the information available to Plaintiff within the two-year limitations period. Plaintiff's inability to name or further identify the Clients in the original Complaint was the result of Fairholme's nondisclosure of the Clients in SEC filings and in responding to Plaintiff's demand, Plaintiff's filing of the Complaint against Fairholme tolls any statute of limitations otherwise applicable to the claims asserted against the Clients named herein as originally intended additional defendants upon the discovery of their identities from Fairholme.

24.     In addition (or in the alternative, to the extent the statute of limitations for Section 16(b) claims against the Fairholme Clients is not preserved or tolled), Plaintiff's claims asserted herein against the Clients relate back to Plaintiff's original Complaint, which was based on the same managed account transactions and sought recovery from Clients unknown to Plaintiff and known exclusively to Fairholme as an originally-named defendant and as agent and attorney-in-fact for each Client.

## BACKGROUND

25.     On or about September 18, 2014, Fairholme and Berkowitz, together with Fairholme Funds, Inc. (an entity under their common control), filed an initial Schedule 13D with the Securities & Exchange Commission (SEC), in which they disclosed their aggregate beneficial ownership of approximately 24% of the outstanding shares of Sears common stock. Their Schedule 13D stated:

> "[Berkowitz and Fairholme] reserve the right to be in contact with Members of [Sears] management [and] Board of Directors, other significant shareholders and others regarding alternatives that [Sears] could employ to increase shareholder value. The contact may include proposing or considering any of the actions enumerated in Item 4 of the instructions to Schedule 13D" (i.e., actions having a "change of control" purpose or effect with respect to Sears).

26.     Among the shares included in the beneficial ownership reported by the Berkowitz and Fairholme on their initial and amended Schedule 13D filings were shares of Sears owned by the Fairholme Clients, and held in discretionary accounts managed by Fairholme (through Berkowitz) pursuant to each Client's respective IMA.

27.     As a result of the "change of control" actions contemplated by Berkowitz and Fairholme, as disclosed on their initial Schedule 13D, Berkowitz and Fairholme became ineligible, from at least September 18, 2014, the date on which their "change of control" intentions were reportedly adopted, to claim any exemption from the Section 16 reporting and disgorgement

obligations that may previously have been available to them as "investment advisors" to the "managed accounts," under SEC Rule 16a-1(a)(1)(v).

28.     As of Fairholme's disclosure of the Sears control purpose adopted in managing Client accounts on September 18, 2014, at the latest, the Fairholme Clients, as owners of the managed accounts, understood and agreed, either affirmatively or through silent acquiescence, to authorize Berkowitz and Fairholme to take the contemplated "change of control actions" for the purpose of "increasing" the "value" of their Sears holdings.

29.     As a result of the consent by the Fairholme Clients to the anticipated "change of control" actions pursued by Fairholme (through Berkowitz) with the voting and investment authority shared with or delegated by each Client over the Sears shares held in their respective Client managed accounts, each (and every) Fairholme Client formed a Section 13(d) "group" with Fairholme and Berkowitz, and became subject to Section 16 as independent statutory "insiders" in their own right.

30.     Additionally, because each Fairholme Client consented and contributed to the Sears control effort disclosed and undertaken by Fairholme and Berkowitz pursuant to the authority provided by each Client's IMA, all of the Fairholme Clients were or became ineligible to claim any "beneficial ownership" or Section 16 exemption previously or otherwise available to the Sears securities held and traded by Fairholme in their respective accounts under SEC Rule 16a-1(a)(1).

31.     The "change of control" actions anticipated and contemplated by Berkowitz and Fairholme, and disclosed in Item 4 of their September 18, 2014, initial Schedule 13D, culminated in Berkowitz's appointment to the Sears board of directors on or about February 24, 2016. Berkowitz remained on the Sears Board at the time of filing of the original Complaint. Berkowitz voluntarily resigned from the Sears board effective October 31, 2017, as disclosed in the Schedule

13D Amendment No. 8 filed on October 17, 2017, which noted that Berkowitz's resignation was "not the result of any disagreement with [Sears] on matters related to [Sears'] operations, policies or practices."

32.    Notwithstanding Berkowitz's resignation from the Sears board, Fairholme and Berkowitz disclosed continued Sears control efforts undertaken for their own benefit and for the collective benefit of the Fairholme Client. As stated in their Schedule 13D Amendment No. 8 (which also publicly announced Berkowitz's resignation), and in their Schedule 13D Amendment No. 9 filed on November 3, 2017:

> "[Berkowitz and Fairholme] reserve the right to be in contact with members of [Sears'] management, the members of [Sears'] Board of Directors, other significant shareholders and others regarding alternatives that [Sears] could employ to increase shareholder value. In addition, [Berkowitz and Fairholme] will be in contact with members of [Sears'] management, the members of [Sears'] Board of Directors, other significant shareholders and others regarding [Berkowitz and Fairholme's] views on the long-term prospects of [Sears]. The contact may include proposing or considering any of the actions enumerated in Item 4 of the instructions to Schedule 13D [i.e., "change of control" actions].

33.    Fairholme's subsequent Schedule 13(d) filings continue to disclose their control efforts and influence exercised over Sears, including but not limited to board nominations and other activities undertaken by Berkowitz on behalf and for the collective benefit of Fairholme and all of the Fairholme Clients as members of the group under Fairholme's common control.

34.    Given Fairholme and Berkowitz's disclosed continuing control purpose and influence over Sears, and in view of Fairholme's continued aggregation of Fairholme funds and Client accounts to maintain cumulative collective beneficial ownership of more than 10% of outstanding Sears common stock, all Fairholme Clients presently invested in Sears through accounts managed by Fairholme remain individually subject to Section 16 as insiders and participating members of Fairholme's Sears control "group" within the meaning of Sections 13

and 16 of the Act, and none of the Fairholme Clients are eligible for any "beneficial ownership" or Section 16 exemption under SEC Rule 16a-1(a)(1), as of the date of this Second Amended Complaint.

35.    Between September 18, 2014, and on an ongoing basis through the date of this Second Amended Complaint, each of the Fairholme Clients and "managed account" owners, together with or by and through Fairholme as their agent and attorney-in-fact, engaged in purchases and sales of Sears common stock or other Sears securities equivalent to common stock during periods of less than six months, which resulted in their realization of profits recoverable under Section 16(b), including the specific transactions alleged below.

## CLAIM FOR RELIEF

36.    Plaintiff repeats and re-alleges the allegations contained in the preceding 35 paragraphs.

37.    The Fairholme Clients, while members of the Section 13(d) "group" organized by Berkowitz and Fairholme, engaged in the purchases and sales and realized the short-swing profits here enumerated:

38.    **CARLOS RODRIGEUZ:**

| Transaction | Date | No. Shares | Price/Share |
|---|---|---|---|
| Purchase | Feb. 2, 2015 | 12,200 | $32.66 |
| Sale | Dec. 31, 2014 | 12,200 | $33.03 |

Subject to revision following discovery, CARLOS RODRIGUEZ realized total short swing profits estimated at $4,514.00.

39.    **JOHN R. BURCH:**

| Transaction | Date | No. Shares | Price/Share |
|---|---|---|---|
| Purchase | Jan. 22, 2015 | 7,100 | $32.14 |

11

| Transaction | Date | No. Shares | Price/Share |
|---|---|---|---|
| Sale | Dec. 22, 2014 | 7,100 | $33.63 |

Subject to revision following discovery, JOHN R. BURCH realized total short swing profits estimated at $10,579.00.

40.   **CHARLES KEATES:**

| Transaction | Date | No. Shares | Price/Share |
|---|---|---|---|
| Purchase | Feb. 11, 2016 | 16,600 | $15.00 |
| Purchase | Jan. 15, 2016 | 13,700 | $17.07 |
| Purchase | Jan. 20, 2016 | 5,200 | $16.48 |
| Sale | Mar. 4, 2016 | 96,200 | $18.40 |

Profits from multiple transactions within a given six-month period are calculated pursuant to the lowest-in, highest-out method prescribed under Section 16(b). Subject to revision following discovery, CHARLES KEATES realized total short swing profits estimated at $84,645.00.

41.   **HEINZ WIEZOREK:**

| Transaction | Date | No. Shares | Price/Share |
|---|---|---|---|
| Purchase | Aug. 14, 2015 | 4,125 | $24.83 |
| Sale | Aug. 14, 2015 | 14,740 | $24.95 |

Subject to revision following discovery, HEINZ WIEZOREK realized total short swing profits estimated at $495.00.

42.   **CHARLOTTE WIEZOREK:**

| Transaction | Date | No. Shares | Price/Share |
|---|---|---|---|
| Purchase | Aug. 14, 2015 | 4,697 | $24.83 |
| Sale | Aug. 14, 2015 | 16,781 | $24.95 |

Subject to revision following discovery, CHARLOTTE WIEZOREK realized total short swing profits estimated at $563.64.

43.   **EVA WIEZOREK:**

| Transaction | Date | No. Shares | Price/Share |
|---|---|---|---|
| Purchase | Aug. 14, 2015 | 4,178 | $24.83 |
| Purchase | Feb. 10, 2016 | 2,500 | $15.10 |
| Sale | Aug. 14, 2015 | 14,929 | $24.95 |

Subject to revision following discovery, EVA WIEZOREK realized total short swing profits estimated at $25,126.36.

44.   **THOMAS BRUNNER:**

| Transaction | Date | No. Shares | Price/Share |
|---|---|---|---|
| Purchase | May 27, 2016 | 200 | $13.30 |
| Purchase | June 1, 2016 | 200 | $12.62 |
| Sale | Aug. 11, 2016 | 1,900 | $17.09 |

Subject to revision following discovery, THOMAS BRUNNER realized total short swing profits estimated at $1,652.00.

45.   **GARY ATWELL and SUSAN ATWELL:**

| Transaction | Date | No. Shares | Price/Share |
|---|---|---|---|
| Purchase | Jan. 14, 2016 | 37,000 | $18.15 |
| Sale | Dec. 14, 2015 | 16,300 | $21.56 |

Subject to revision following discovery, GARY ATWELL and SUSAN ATWELL collectively realized total short swing profits estimated at $55,583.00.

46.   **LARRY SOUZA and SHARON SOUZA:**

| Transaction | Date | No. Shares | Price/Share |
|---|---|---|---|
| Purchase | Jan. 14, 2016 | 1,400 | $18.15 |
| Purchase | Jan. 19, 2016 | 1,500 | $17.19 |
| Purchase | Feb. 10, 2016 | 2,800 | $15.10 |
| Purchase | June 1, 2016 | 3,700 | $12.62 |
| Sale | Dec. 8, 2015 | 22,800 | $19.95 |

Subject to revision following discovery, LARRY SOUZA and SHARON SOUZA collectively realized total short swing profits estimated at $47,361.00.

47.    **ROBERT RUBIN and NANCY RUBIN:**

| Transaction | Date | No. Shares | Price/Share |
|---|---|---|---|
| Purchase | Jan. 25, 2016 | 6,800 | $18.19 |
| Purchase | Jan. 26, 2016 | 500 | $17 |
| Purchase | Feb. 9, 2016 | 400 | $15.71 |
| Purchase | June 1, 2016 | 800 | $12.51 |
| Purchase | June 10, 2016 | 600 | $12.44 |
| Sale | Dec. 24, 2015 | 5,600 | $20.92 |

Subject to revision following discovery, ROBERT RUBIN and NANCY RUBIN collectively realized total short swing profits estimated at $24,869.00.

48.    **JENNIFER COLL (as trustee for unidentified beneficiaries):**

| Transaction | Date | No. Shares | Price/Share |
|---|---|---|---|
| Purchase | Jan. 29, 2016 | 7,800 | $17.49 |
| Purchase | Feb. 9, 2016 | 700 | $15.71 |
| Purchase | June 1, 2016 | 800 | $12.51 |
| Purchase | June 10, 2016 | 600 | $12.44 |
| Sale | Dec. 29, 2015 | 5,200 | $21.07 |

Subject to revision following discovery, JENNIFER COLL, in her capacity as trustee for an unidentified trust held on behalf of unknown beneficiaries, realized total short swing profits estimated at $26,876.00.

49.    **JENNIFER COLL (as trustee for unidentified beneficiaries):**

| Transaction | Date | No. Shares | Price/Share |
|---|---|---|---|
| Purchase | Jan. 29, 2016 | 7,600 | $17.49 |
| Purchase | Feb. 9, 2016 | 800 | $15.71 |
| Purchase | June 1, 2016 | 800 | $12.51 |
| Purchase | June 10, 2016 | 600 | $12.44 |
| Sale | Dec. 29, 2015 | 5,100 | $21.07 |

Subject to revision following discovery, JENNIFER COLL, in her capacity as trustee for an unidentified trust held on behalf of unknown beneficiaries, realized total short swing profits estimated at $26,696.00.

50.    **JENNIFER COLL (individually):**

| Transaction | Date | No. Shares | Price/Share |
|---|---|---|---|
| Purchase | Jan. 29, 2016 | 17,200 | $17.49 |
| Purchase | Feb. 9, 2016 | 1,600 | $15.71 |
| Purchase | June 1, 2016 | 1,000 | $12.51 |
| Purchase | June 10, 2016 | 1,300 | $12.44 |
| Sale | Dec. 29, 2015 | 11,500 | $21.07 |

Subject to revision following discovery, JENNIFER COLL (acting in her individual capacity and for her own benefit), realized total short swing profits estimated at $55,563.00.

51.    Total short swing profits recoverable from all Defendants cannot be calculated with precision prior to discovery, but are presently estimated at $364,523.00, which is equal to the sum total of profits recoverable from all of the Fairholme Clients (or their respective "managed accounts"), as individually calculated in Paragraphs 38-50 of this Claim for Relief.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury as to all issues so triable.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for judgment:

a) Requiring each Defendant to account for and pay to Sears the short-swing profits recoverable from him, her or it under the Act together with appropriate pre-judgment and post-judgment interest and costs of this suit;

b) Awarding to Plaintiff his costs and disbursements including reasonable attorneys, accountants and expert witness fees; and

c)  Granting such other and further relief as the Court deems just and proper.

Dated:   New York, New York
              March 8, 2018

*s/ David Lopez*                                         *s/ Miriam Tauber*

David Lopez (DL-6779)                          Miriam Tauber (MT-1979)
Law Offices of David Lopez                    Miriam Tauber Law PLLC
171 Edge of Woods Road (PO Box 323)   885 Park Avenue 2A
Southampton, New York 11968               New York, New York 10075
Telephone: (631) 287-5520                      Telephone: (323) 790-4881
Email:  DavidLopezEsq@aol.com             Email:  MiriamTauberLaw@gmail.com
*Attorney for Plaintiff*                              *Attorney for Plaintiff*

16