UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————
AARON RUBENSTEIN,
         Plaintiff,

     -v-

BRUCE R. BERKOWITZ, et al.,
         Defendants,

     and

SEARS HOLDINGS CORP.,
      Nominal Defendant.
———————————————————————

17-CV-821 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

  Plaintiff Aaron Rubenstein, suing as a shareholder of Sears Holdings Corp. ("Sears"), brings this action seeking the disgorgement of corporate insider short-swing profits—*i.e.*, profits from the purchase and sale of company stock where both transactions occur within a single six-month period. After the Court dismissed Plaintiff's claims against investment advisors Bruce Berkowitz and Fairholme Capital Management, L.L.C. (Dkt. Nos. 25, 37), Plaintiff filed a Second Amended Complaint seeking disgorgement from clients of Berkowitz and Fairholme (the "Fairholme Clients") of short-swing profits from trades of Sears stock pursuant to Section 16(b) of the Securities Exchange Act of 1934 (Dkt. No. 38 ("SAC")). The Fairholme Clients now move to dismiss Plaintiff's Second Amended Complaint. (Dkt. No. 81.) For the reasons that follow, the motion is granted.

**I. Background**

  **A. Factual Background**

  Familiarity with the factual background of this case is presumed based on this Court's prior opinion on an earlier motion to dismiss. *See Rubenstein v. Berkowitz*, No. 17 Civ. 821,

1

2017 WL 6343685 (S.D.N.Y. Dec. 11, 2017). The following facts are drawn from the operative Second Amended Complaint and are presumed true for the purposes of this motion.

Plaintiff Aaron Rubenstein owns Sears stock. (SAC ¶ 12.) Defendants the Fairholme Clients all own brokerage accounts managed by Fairholme Capital Management and its director, Bruce Berkowitz. (SAC ¶¶ 3, 5, 14.) Sears is a nominal defendant in this action (SAC ¶ 13), and Plaintiff has voluntarily dismissed with prejudice all of his claims against former defendants Fairholme Capital Management and Berkowitz (Dkt. Nos. 36–37), so "Defendants" refers to the Fairholme Clients only. The Fairholme Clients remaining in this action, who have filed the instant motion to dismiss, are: Rofam Inv. LLC; John R. Burch; Perceval Investment Partners, L.P.; Eva Wiezorek; Gary Atwell and Susan Atwell (as trustees for Susan L. Atwell Revocable Trust); Larry Souza and Sharon Souza (as trustees for The Souza Family Trust); Robert Rubin (as trustee for Robert Rubin Revocable Trust); and Jennifer Coll (individually and as trustee for Megan B. Coll Grantor Trust and as trustee for Robert J. Coll, III Grantor Trust).[1] (*See* SAC ¶¶ 38–50; Dkt. No. 79.)

In September 2014, Fairholme Capital Management and Berkowitz (together, "Fairholme Capital") filed a Schedule 13D with the Securities and Exchange Commission ("SEC").[2] (SAC ¶ 25.) The 13D filing disclosed that Fairholme Capital beneficially owned about "24% of the outstanding shares of Sears common stock," some portion of which was owned by the Fairholme Clients. (SAC ¶¶ 25–26.) In filing the Schedule 13D, Fairholme Capital reserved the right to

---

[1] Three other Fairholme Clients named in the Second Amended Complaint—Thomas Brunner, Heinz Wiezorek, and Charlotte Wiezorek—have been voluntarily dismissed from this action. (Dkt. Nos. 77, 91.)

[2] Schedule 13D filings are required whenever a person acquires beneficial ownership of more than 5% of a public company's stock. 17 C.F.R. § 240.13d–19(a).

use its voting power to push for changes in the company, including actions having a "change of control" purpose. (SAC ¶ 25.)

Plaintiff alleges that all of the Fairholme Clients, by virtue of having delegated discretionary control over their accounts to Fairholme Capital, formed a "group" of Sears insiders along with Fairholme Capital. (SAC ¶¶ 8, 28–29.) In support of this "group" allegation, Plaintiff cites the Fairholme Clients' "investment management agreements" ("IMAs") with Fairholme Capital, by which they delegated to Fairholme Capital discretionary authority to use their shares to pursue its control-purpose strategy. (SAC ¶¶ 3–4, 30.) Plaintiff also relies on the Fairholme Clients' acquiescence in Fairholme Capital's continued use of their shares in furtherance of its control purpose in the period following Fairholme Capital's September 2014 Schedule 13D filing. (SAC ¶¶ 8, 28–29.) Plaintiff alleges that because of this group membership, each of the Fairholme Clients became corporate insiders subject to the short-swing-profit rule. (SAC ¶¶ 28–29.)

After the Fairholme Clients became subject to the short-swing-profit rule in September 2014, Plaintiff alleges that they each engaged in profitable short-swing trades. (SAC ¶¶ 38–51.) Accordingly, the Second Amended Complaint demands that each Defendant disgorge to Sears any short-swing profits they made. (SAC at 15.)

B.      **Procedural Background**

Plaintiff commenced this action on February 2, 2017, filing a complaint naming Fairholme Capital Management and Berkowitz as defendants and Sears as a nominal defendant. (Dkt. No. 1.) On December 11, 2017, the Court dismissed Plaintiff's claims against Fairholme Capital Management and Berkowitz for failure to allege any short-swing trades of securities in which they themselves held a pecuniary interest, which is a prerequisite for a Section 16(b)

3

disgorgement claim.  (Dkt. No. 25 at 6–9.)  The Court granted Plaintiff leave to replead in order to name the Fairholme Clients as defendants.  (Dkt. No. 25 at 9–10.)

On December 20, 2017, Plaintiff filed a First Amended Complaint based on the same set of transactions currently at issue, this time naming not only Fairholme Capital Management and Berkowitz as defendants, but also the Fairholme Clients as John Does 1–13.  (Dkt. No. 26.)  After Fairholme Capital Management and Berkowitz answered the First Amended Complaint and moved for judgment on the pleadings (Dkt. Nos. 30–32), Plaintiff agreed to withdraw his claims against them in exchange for disclosure of the identities of John Does 1–13 (Dkt. Nos. 34, 36).  Plaintiff then filed the operative Second Amended Complaint, which names only the Fairholme Clients as defendants (again, along with Sears as a nominal defendant).  (Dkt. No. 38.)  The Fairholme Clients now move to dismiss Plaintiff's Second Amended Complaint.  (Dkt. No. 81.)

## II.   Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Where a plaintiff "ha[s] not nudged [her] claims across the line from conceivable to plausible, [her] complaint must be dismissed."  *Twombly*, 550 U.S. at 570.

A court deciding a Rule 12(b)(6) motion to dismiss must "accept[] as true the factual allegations in the complaint and draw[ ] all inferences in the plaintiff's favor," *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006) (quoting *Scutti Enters., LLC v. Park Place Entm't Corp.*, 322 F.3d 211, 214 (2d Cir. 2003)), save for any "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678.  In addition to "the allegations on the face of the complaint," courts resolving Rule 12(b)(6) motions

also "may permissibly consider documents . . . that are attached to the complaint or incorporated in it by reference" or any "document upon which [the complaint] solely relies and which is integral to the complaint." *Roth v. Jennings*, 489 F.3d 499, 509 (2d. Cir. 2007) (cleaned up).

### III. Discussion

The Fairholme Clients argue that the Court should dismiss Plaintiff's Section 16(b) claims against them for two independent reasons: (1) Plaintiff's claims are time barred (Dkt. No. 82 at 8–20); and (2) Plaintiff has failed to allege facts sufficient to show that the Fairholme Clients were part of a "group" of statutory insiders subject to Section 16(b) liability (Dkt. No. 82 at 20–24). The Court addresses only Defendants' second argument, because it provides a sufficient basis for granting Defendants' motion.

#### A. Statutory Framework

The Court assumes familiarity with the federal statutes and administrative rules governing Plaintiff's claims, based on this Court's prior opinion on the previous motion to dismiss. *See Rubenstein*, 2017 WL 6343685, at *2. The Court only briefly reviews them here.

Plaintiff seeks disgorgement of the Fairholme Clients' short-swing profits on their trades of Sears stock pursuant to Section 16(b) of the Exchange Act. (SAC ¶ 1.) Section 16(b) provides that:

> For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer . . . within any period of less than six months . . . shall inure to and be recoverable by the issuer . . . .

15 U.S.C. § 78p(b). The statute further mandates that "no such suit [for disgorgement] shall be brought more than two years after the date such profit was realized." *Id.*

5

By its plain terms, Section 16(b) allows for disgorgement whenever there is "(1) a purchase and (2) a sale of securities (3) by an officer or director of the issuer or by a shareholder who owns more than ten percent of any one class of the issuer's securities (4) within a six-month period." *Gwozdzinsky v. Zell/Chilmark Fund, L.P.*, 156 F.3d 305, 308 (2d Cir. 1998). The statute "operates mechanically, and makes no moral distinctions, penalizing technical violators of pure heart, and bypassing corrupt insiders who skirt the letter of the prohibition." *Magma Power Co. v. Dow Chem. Co.*, 136 F.3d 316, 320–21 (2d Cir. 1998). As long as an insider buys-then-sells or sells-then-buys stock in the company, with both transactions occurring within six months of each other, the insider is strictly liable. *Gwozdzinsky*, 156 F.3d at 310.

As the Court has previously explained, Section 16 does not define "beneficial owner," but instead leaves that task to the SEC, and the SEC, somewhat confusingly, has adopted two definitions of "beneficial owner." *See Rubenstein*, 2017 WL 6343685, at *2; *see also* 17 C.F.R. § 240.16a–1(a)(1)–(2). The Second Circuit has explained that:

> The first use is to determine who is a ten-percent beneficial owner and therefore a statutory insider. The second use is the determination of which transactions must be reported under Section 16(a) as effecting a change in beneficial ownership or as triggering liability under Section 16(b).

*Feder v. Frost*, 220 F.3d 29, 33 (2d Cir. 2000).

At issue in this motion is primarily the SEC's first definition, which is used to determine whether someone is a statutory insider. For purposes of this inquiry, the SEC has adopted the definition used in Section 13(d) of the Exchange Act, which defines "beneficial owner" as "any person who, directly or indirectly, through any contract, arrangement, understanding, relationship, or otherwise has or shares [v]oting power . . . and/or [i]nvestment power." 17 C.F.R. § 240.13d–3(a); 17 C.F.R. § 240.16a–1(a)(1). Section 13(d) further provides that "[w]hen two or more persons act as a partnership, limited partnership, syndicate, or other group for the

6

purpose of acquiring, holding, or disposing of securities of an issuer, such syndicate or group shall be deemed a 'person' for the purposes of" the "beneficial owner" inquiry. 15 U.S.C. § 78m(d)(3); *see also* 17 CFR § 240.13d–5(b)(1) ("When two or more persons agree to act together for the purpose of acquiring . . . equity securities of an issuer, the group formed thereby shall be deemed to have acquired beneficial ownership . . . of all equity securities of that issuer beneficially owned by any such persons.").

Once a person is deemed a corporate insider, the second definition of "beneficial owner" comes into play for purposes of determining whether Section 16(b) covers the insider's trades of any particular securities. The SEC defines "beneficial owner" for purposes of this second inquiry as "any person who, directly or indirectly . . . has or shares a direct or indirect pecuniary interest in the equity securities. . . ." 17 C.F.R. § 240.16a–1(a)(2). An insider may be said to share a "pecuniary interest" in a security when they have "the opportunity, directly or indirectly, to profit or share in any profit derived from a transaction in the subject securities." *Id.* § 240.16a–1(a)(2)(i).

### B.   Group Membership

As the Court held in its prior opinion, Plaintiff has pleaded facts sufficient to establish that Fairholme Capital Management and Berkowitz qualify as statutory insiders by virtue of their beneficial ownership of the requisite quantity of Sears stock and their "control purpose" with respect to Sears. *See Rubenstein*, 2017 WL 6343685, at *3.[3]

---

[3] Defendants, as they did in the earlier motion to dismiss (*see* Dkt. No. 17 at 6 n.5), contend in a footnote that Fairholme Capital Management and Berkowitz are eligible for the statutory-insider exception for registered investment advisers (*see* Dkt. No. 82 at 23 n.16). But importantly, the investment-advisor exception does not apply when the investment advisor acquires shares with "the purpose or effect of changing or influencing control of the issuer." 17 C.F.R. § 240.16a–1(a)(1). Here, Plaintiff alleges that Fairholme Capital Management and Berkowitz have since the time of their first 13D filing "reserve[d] the right to be in contact with members of [Sears'] management [and] Board of Directors . . . [regarding] actions having a

Plaintiff does not allege, however, that any of the Fairholme Clients—the currently named Defendants—individually held a sufficient quantity of Sears stock to independently qualify as statutory insiders subject to Section 16(b).  Instead, Plaintiff alleges that "the Fairholme Clients, as owners of the managed accounts, understood and agreed, either affirmatively or through silent acquiescence, to authorize Berkowitz and Fairholme to take the contemplated 'change of control actions' for the purpose of 'increasing' the 'value' of their Sears holdings."  (SAC ¶ 28.)  Plaintiff further alleges that in doing so, "each (and every) Fairholme Client formed a Section 13(d) 'group' with Fairholme and Berkowitz, and became subject to Section 16 as independent statutory 'insiders' in their own right."  (SAC ¶ 29.)  Defendants move to dismiss Plaintiff's Section 16(b) claims against them on the ground that he has failed to "allege any facts sufficient to support a plausible inference that [they] became insiders (and thereby subject to Section 16(b)) by virtue of an agreement to form a shareholder 'group' which collectively owned ten percent or more of Sears securities."  (Dkt. No. 82 at 20.)

The primary question before the Court on the present motion is thus whether Plaintiff has plausibly alleged that each of the Fairholme Clients formed a "group" with Fairholme Capital Management and Berkowitz such that they all "became subject to Section 16 as independent statutory 'insiders' in their own right."  (SAC ¶ 29.)  The definition of "beneficial owner" that applies to the Rule 16(b) statutory-insider inquiry comes from Section 13(d), *see* 17 C.F.R. § 240.16a-1(a)(1), which provides that "[w]hen two or more persons act as a partnership, limited

---

'change of control' purpose or effect with respect to [Sears]."  (SAC ¶ 25.)  Just as it did with identical allegations contained in the initial complaint, so too here the Court accepts these allegations for purposes of this motion as sufficient to establish that Fairholme Capital Management and Berkowitz qualify as statutory insiders by virtue of their beneficial ownership of more than ten percent of Sears stock and their "control purpose."  *See Rubenstein*, 2017 WL 6343685, at *2–3.

8

partnership, syndicate, or other group for the purpose of acquiring, holding, or disposing of securities of an issuer, such syndicate or group shall be deemed a 'person' for the purposes of" calculating the number of shares beneficially owned by them. 15 U.S.C. § 78m(d)(3). SEC Rule 13d–5(b)(1), promulgated under Section 13(d), further provides that when a group has "agree[d] to act together" for such a purpose, it "shall be deemed to have acquired beneficial ownership, for purposes of sections 13(d) and (g) of the Act, as of the date of such agreement, of all equity securities of that issuer beneficially owned by any such persons." 17 C.F.R. § 240.13d–5(b)(1).

To determine whether persons constitute a "group" under Section 13(d), courts inquire as to: "(a) whether two or more persons 'act[ed]' as a group or agreed to act together, and (b) whether their purpose was the acquisition, holding, or disposition of an issuer's equity securities." *Roth*, 489 F.3d at 508. "An agreement to act together for the purpose of acquiring, holding, or disposing of shares need not be unconditional" and "[t]he formation of such a group may be formal or informal." *Id.* (internal quotation marks omitted). Ultimately, "the touchstone of a group within the meaning of Section 13(d) is that the members combined in furtherance of a common objective." *Wellman v. Dickinson*, 682 F.2d 355, 363 (2d Cir. 1982). Whether such a group was formed is a question of fact. *Roth*, 489 F.3d at 508. But where, as here, the existence of an "alleged shareholder group is the subject of [a] motion to dismiss," courts should grant the motion unless the "[c]omplaint contain[s] factual content sufficient to permit the Court to draw the reasonable inference that a Section 13(d) group existed." *Chechele v. Scheetz*, 819 F. Supp. 2d 342, 346 (S.D.N.Y. 2011) (internal quotation marks omitted), *aff'd mem.*, 466 F. App'x 39 (2d Cir. 2012).

As the language of Rule 13(d) makes plain, to form a Section 13(d) group, the "purpose" underlying the parties' agreement must be directed towards the "securities of an issuer," and the

9

resulting joint beneficial ownership applies only to the "equity securities of that issuer." 17 C.F.R. § 240.13d–5(b)(1). Courts have recognized that in order to constitute a group under Section 13(d), it must be "formed *for the purpose of acquiring* [those] securities." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 544, 552 (S.D.N.Y. 2014) (alteration in original) (quoting *CSX Corp. v. Children's Inv. Fund Mgmt. (UK) LLP*, 654 F.3d 276, 284 (2d Cir. 2011)). Indeed, the Second Circuit has deemed it error for a district court to find that a Section 13(d) "group" had been formed where the court "did not explicitly find a group formed for the purpose of acquiring [the relevant issuer's] securities." *CSX Corp.*, 654 F.3d at 284.

Here, Plaintiff nowhere alleges that any of the Fairholme Clients ever expressly "agree[d] to act together [with Fairholme Capital] for the purpose of acquiring. . . equity securities of" Sears. 17 C.F.R. § 240.13d–5(b)(1). Instead, Plaintiff alleges only that the Fairholme Clients agreed to delegate to Fairholme Capital the general discretion to acquire any manner of securities, and that Fairholme Capital independently exercised that discretion to acquire the relevant Sears securities. (*See, e.g.*, SAC ¶ 4.) The IMAs between the Fairholme Clients and Fairholme Capital confirm that this was the case.[4] Though the Fairholme Clients delegated broad discretion to Fairholme Capital to acquire securities for them, without limitations or

---

[4] In support of their motion to dismiss, Defendants attach complete versions of these IMAs. (*See* Dkt. No. 83.) Plaintiff relied upon the contents of the IMAs in his Second Amended Complaint. (*See, e.g.*, SAC ¶¶ 3–4, 6, 14–15.) Plaintiff raises no objection to the Court's consideration of the full versions of the IMAs in connection with the instant motion to dismiss; instead, he cites specific provisions of the IMAs in his opposition brief. (Dkt. No. 86 at 7–8.) Because Plaintiff's "complaint relies heavily upon [the IMAs'] terms and effect[s], which renders the document[s] integral to the complaint," and because "[P]laintiff ha[d] actual notice of all the information in the [IMAs] and ha[d] relied upon these documents in framing the complaint," the Court will consider the contents of the IMAs for purposes of Defendants' motion to dismiss. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted).

direction as to which securities would be invested in (*see, e.g.*, Dkt. No. 83-1 ¶ 2), the IMAs are silent with respect to any specific securities issuer, and they nowhere mention Sears.  The true contents of the IMAs thus confirm that the Fairholme Clients and Fairholme Capital never reached any agreement with respect to the "equity securities *of an issuer*."  17 C.F.R. § 240.13d–5(b)(1) (emphasis added).  And because the Second Amended Complaint is devoid of any allegations that the Fairholme Clients ever entered into any other agreements with Fairholme Capital, there are no facts from which the Court can reasonably infer that a group had been "formed for the purpose of acquiring [Sears'] securities."  *CSX Corp.*, 654 F.3d at 284.

      Plaintiff insists that a client's act of delegating general and open-ended investment authority to a registered investment advisor ("RIA") is by itself sufficient to establish a "group" with respect to any securities subsequently acquired by that RIA.  (Dkt. No. 86 at 23.)  But this reading of "group" would essentially render meaningless other language in the statute, namely the phrase "of an issuer."  15 U.S.C. § 78m(d)(3); *see also* 17 C.F.R. § 240.13d–5(b)(1).  If an open-ended IMA such as the one at issue here that is silent with respect to any particular securities issuer were itself sufficient to form a Section 13D group, then the statute's express requirement that any such group must be formed with respect to the securities "of an issuer" would serve no function.  To read the statute this way would run afoul of this "court['s obligation to] give effect to all of a statute's provisions 'so that no part will be inoperative or superfluous, void or insignificant.'"  *United States v. Harris*, 838 F.3d 98, 106 (2d Cir. 2016) (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)).  Plaintiff's reading of the statute and rule would also seemingly run afoul of the principle that members of a Section 13(d) group must have "combined to further a common objective with regard to one of those activities" enumerated in the statute,  *Roth*, 489 F.3d at 508 (cleaned up), because all of the statute's enumerated activities

are made with reference to the "securities *of an issuer*," 15 U.S.C. § 78m(d)(3) (emphasis added).

Moreover, Plaintiff's proposed theory of group membership would essentially render any and all of an RIA's clients part of a common group for purposes of Section 16(b) disgorgement, even if the RIA independently and by itself resolved to acquire the relevant issuer's securities without having agreed to do so with its clients. Such a broad theory has been consistently rejected by courts facing similar allegations. *See, e.g.*, *Brian B. Sand & Zachary B. Sand Joint Tr. v. Biotech. Value Fund, L.P.*, No. 16 Civ. 1313, 2017 WL 3142110, at *6–7 (N.D. Cal. July 25, 2017) (rejecting similar "'hub-and-spoke' theory" where plaintiff's "allegations only indicate[d that defendants] delegated authority of their . . . holdings to" a common fund manager); *Greenfield v. Criterion Capital Mgmt., LLC*, No. 15 Civ. 3583, 2017 WL 2720208, at *6–8 (N.D. Cal. June 23, 2017) ("Carried to its logical conclusion, plaintiff's theory would necessarily lead to the result that anyone who enters into an investment advisory agreement with an RIA would form a Rule 13(d) group with the RIA and any other clients of the RIA who purchased shares of the same company's stock. This is plainly not what is set forth in [Section] 13(d) or Rule 13d-5."); *Goldstein v. QVT Assocs. GP LLC*, No. 10 Civ. 2488, 2010 WL 4058157, at *5 (S.D.N.Y. Oct. 15, 2010) ("A bare allegation of common control is, standing alone, insufficient to give rise to an inference of the agreement that is necessary to an existence of a Section 13(d) group."). This Court too declines to construe a client's delegation of open-ended investment discretion to its RIA as the equivalent of an express agreement to form "a group . . . for the purpose of acquiring [one particular issuer's] securities." *CSX Corp.*, 654 F.3d at 284.

Perhaps aware of the shortfalls of his theory that the IMAs represented affirmative agreements between the Fairholme Clients and Fairholme Capital to form a Sears control group, Plaintiff pleads in the alternative that the Fairholme Clients "understood and agreed . . . through silent acquiescence, to authorize Berkowitz and Fairholme to take the contemplated 'change of control actions' . . . [with] their Sears holdings."  (SAC ¶ 28.)  By "silent acquiescence," Plaintiff presumably means the Fairholme Clients' failure to object to Fairholme Capital's continued use of their shares in furtherance of its control purpose, even after Fairholme Capital's first Schedule 13D filing.  (SAC ¶¶ 25–28; *see also* SAC ¶ 8 ("[Fairholme Clients] became independent statutory insiders of Sears . . . at least as of the date on which Fairholme [Capital] publicly disclosed [its] Sears control purpose.").)  But courts in this District have rejected similarly amorphous assertions of group membership based on "implied" agreements as lacking specific factual allegations sufficient to show an agreed-to common purpose or objective.  *See, e.g.*, *Chechele*, 819 F. Supp. 2d at 349–50.  Plaintiff's allegations here, also premised on a purported "implied" agreement to act, fare no better.  *See id.*  Given that "[t]he touchstone of a group within the meaning of Section 13(d) is that the members combined in furtherance of a common objective," *id.* at 349 (alterations in original) (quoting *CSX Corp.*, 654 F.3d at 283), this Court will not rely on bare allegations of "silent acquiescence" (SAC ¶ 28) to draw the "inference of coordinated activity" required for purposes of Section 13(d), *Chechele*, 819 F. Supp. 2d at 348.[5]

---

[5] After briefing had concluded, Defendants submitted a notice of supplemental authority (Dkt. No. 92), highlighting that another court in this District had issued an opinion addressing some of the issues presented by the instant motion.  *See Rubenstein v. Int'l Value Advisers, LLC*, No. 18 Civ. 81, 2019 WL 464873, at *7–11 (S.D.N.Y. Feb. 5, 2019).  For the reasons given above, the Court agrees in full with the conclusion of *International Value Advisers* that "[t]he delegation of investment authority to an investment advisor, alone, does not suffice to create a 'group' under [Section] 13(d) and Rule 13d-5(b)(1)," *id.* at *11, and that the mere fact of an RIA's "disclosure of a control purpose regarding [an issuer] d[oes] not form a 'group' between them and [their clients]" with respect to that issuer's securities, *id.* at *12.

Plaintiff has thus failed to plausibly allege that any of the Defendants formed a "group" of statutory insiders with Fairholme Capital. Because Plaintiff does not allege any other basis on which Defendants qualify as Sears statutory insiders, his Section 16(b) claims against them must therefore be dismissed.

## IV.  Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. As Plaintiff has twice before received the opportunity to filed amended pleadings (Dkt. Nos. 25, 37), the dismissal of Plaintiff's claims is with prejudice.

The Clerk of Court is directed to close the motion at Docket Number 81 and to close this case.

SO ORDERED.

Dated: March 27, 2019
       New York, New York

_____
J. PAUL OETKEN
United States District Judge